MRS. AVER MEADOR ET AL. v. J. T. ROBISON, COMMISSIONER, ET AL.

No. 1975. Decided March 2, 1910.

**1.—School Land—Sale—Act of 1905—Unsurveyed Lands.**

Section 2, of the Act of April 15, 1905, Laws 29th Leg., p. 160, has no applica-tion to the sale of unsurveyed lands; these do not come on the market by the expiration or cancellation of the lease and the giving notice by the Land Commis-sioner, as provided in section 2, of the date on which they will be open to purchase. They may, however, be sold under section 8, to an applicant having them surveyed in accordance with its provisions; and the preference right to purchase given to the applicant so doing is not prejudiced by the fact that his application and survey was made before the day fixed by the Commissioner's notice opening them to purchase under section 2 of such Act. (p. 208, 209).

**2.—Same—Case Stated.**

The lease of a large tract of unsurveyed school land was lawfully canceled by the Commissioner of the General Land Office, who thereupon gave notice as pro-vided in section 2, of the Act of April 15, 1905, Laws 29th Leg., p. 160, that the land would be on the market for sale on January 1, thereafter. Before this date, but after the cancellation, C. proceeded under section 8, of the same Act, to have the land surveyed and apply to purchase it. M. procured a similar survey and made a similar application to purchase after January 1. Held, that the Commissioner properly awarded the land to C. as purchaser. (Pp. 208, 209)

Original application by Meador to the Supreme Court for writ of mandamus against the Commissioner of the General Land Office, Cooper, who was adversely interested, being made corespondent.

*A. L. Camp and Charles Rogan,* for relator.—An application filed for the survey of land with the intent of buying it prior to the reception by the clerk of the notice that the lease had been canceled and entered on his record, is void as against an application for a survey of the same land and for the same purpose filed after the notice was received by the clerk and entered of record. Ford v. Brown, 74 S. W., 535; Willoughby v. Townsend, 53 S. W., 581; Hazelwood v. Rogan, 80 S. W., 89; Boswell v. Terrell, 78 S. W., 4; Corrigan v. Fitzsimmons, 76 S. W., 68; Willoughby v. Terrell, 90 S. W., 1091; Jones v. Lohman, 81 S. W., 1002.

An application for a survey of land with the intention of buying it, filed after the land comes on the market, is an intervening right as against an unaccepted application for the same purpose filed before notice to the clerk of the cancellation of a lease was received and entered by him on his record and before the land came on the market. Same authorities. Also, Perry v. Rutherford, 87 S. W., 1054; Hamilton v. Terrell, 107 S. W., 47; Stewart v. Wagner, 68 S. W., 297; Threadgill v. Butler, 77 S. W., 43; Patterson v. Terrell, 74 S. W., 19; Lindsey v. Terrell, 101 S. W., 1073; Corbin v. McGee, 67 S. W., 1068.

An award based on an application filed before the lease is canceled and before the clerk receives notice of that fact and enters the same upon his record is void, if another application, filed after the clerk enters the cancellation in his record, be pending at the time the award on the premature application is made. Ford v. Brown, 74 S. W., 535; Willoughby v. Townsend, 53 S. W., 581; Willoughby v. Terrell, 90 S. W., 1091; Boswell v. Terrell, 78 S. W., 4; Corrigan v. Fitzsimmons, 76 S. W., 68; Hazelwood v. Rogan, 67 S. W., 80; Jones v. Lohman, 81 S. W., 1002; Perry v. Rutherford, 87 S. W., 1054; Hamilton v. Terrell, 107 S. W., 47; Patterson v. Terrell, 74 S. W., 19; Lindsey v. Terrell, 101 S. W., 1073.

In the sale of the unsurveyed school land, no rights can be acquired by filing an application prior to the day on which said land comes on the market for sale, because said unsurveyed lands are not sold on competitive bids, but to the first applicant who files an application for survey after the land is on the market, and the interest of the school fund is protected by the law which requires the Land Commissioner to classify and appraise such land and, if the applicant refuses to buy at such price and classification, to place the land on the market as surveyed land to the highest bidder, and hence relator's application filed with the county surveyor on January 2, 1909, is and was the only legal application and the award should have been made thereon. Chapter 103, Gen. Laws, 29th Legislature, 1905, secs. 2, 8; Sec. 3, Chapter 11, First called session, 26th Legislature, 1900; West v. Terrell, 74 S. W., 903; Willoughby v. Terrell, 90 S. W., 1091.

*R. V. Davidson,* Attorney-General, and *Wm. E. Hawkins* and *L. A. Dale,* Assistants, for respondent Robison.

*Charles Gibbs,* for respondent Cooper.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

A lease covering a large tract of unsurveyed school land, including that in controversy, having been lawfully canceled October 1, 1908, by the respondent, he mailed to the county clerks of the counties in which the land was situated a notice, dated October 6, and received and recorded by the clerks October 8, in which he fixed January 1, 1909, as the day on which the land would be on the market for sale. In giving this notice respondent seems to have intended to comply with section 2 of the Act of April 15, 1905, (Laws 29th Leg., p. 160), as applicable.

On the same day, but after the lease was canceled, corespondent Cooper made proper application to the county surveyor for the surveying of 1920 acres of the land, in accordance with section 8 of the statute just referred to, and thereafter all the proceedings provided by that section were regularly conducted, resulting in a sale of the three sections so surveyed to Cooper by respondent on February 6, 1909.

Relator made two applications to the same county surveyor for the surveying of four sections, one on October 8, 1908, after the county clerk had filed and recorded the notice above stated, and the other on January 2, 1909, and the sections since claimed by her were regularly surveyed and all the other proceedings required by section 8 were taken under each of such applications. One of the sections surveyed for Cooper (No 11), was included in her applications and was also surveyed for her. That section was denied to her and sold to Cooper by the Commissioner.

The only contention of relator's counsel is that Cooper's application for a survey was inoperative to secure to him the right to acquire the land in preference to others, as provided by section 8, because at the time it was filed the proper notice had not been given and the time when the land would become subject to sale had not arrived. We think there is an error in this contention growing out of the confusion of the procedure for the sale of unsurveyed land with that for the sale of the surveyed sections. Section 2 of the Act of 1905 relates to land that "shall come on the market by reason of the expiration of such lease." Unsurveyed land does not so come on the market by the mere termination of a lease, in fact, never comes on the market, for the reason that no provision is made for the sale of it in the unsurveyed state. The notice is required to specify the time "on and after which applications to purchase may be filed." No application to purchase unsurveyed land can be filed under this, or any other statute, upon the mere arrival of a given date. The Commissioner is required to give publicity to the time when "land will be on the market for sale by reason of the expiration of any lease;" and the section further says: "When a lease is canceled . . . the land shall not be for sale until ninety days thereafter," and publicity is to be given as in the case of expiration. All this plainly shows that these provisions are made with reference to sectionized school lands, which otherwise would be subject to sale at once upon the cancellation or expiration of a lease embracing them, and not with reference to unsurveyed lands which do not thus become subject to sale and can not be made so subject by mere notice.

Section 2 lays the foundation for purchases under section 3 by "any person desiring to purchase any of the *surveyed* land." Besides the provision made for the surveying and sectionizing of the public domain added to the school fund by the Act of 1900, under the authority of the Commissioner, by virtue of which surveying the sections defined thereby may thereafter be sold as other surveyed land, there is the special provision of section 8 of the Act of 1905, under which individuals are allowed to have surveyed the quantities of land therein specified and then to purchase them in accordance with that provision. While that is a method by which the land finally becomes subject to sale and purchase, it so becomes subject only after the survey has been made and approved, and then only to him who has caused the survey in the first instance, and to others, like other sectionized land, only after he has failed to exercise his preference within the prescribed time. It seems plain that the provisions of section 2, relating to land which becomes subject to sale by the mere termination of a lease and the giving of a notice, have no application to land which must be treated as required by section 8 before it can be sold at all, and that the Commissioner was right in the construction which he seems to have adopted finally.

*Mandamus refused.*